# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA )</br>)</br>v.   )</br>)</br>STEVEN B. BRIDGERS,   )</br>)</br>*Defendant*.   ) | Criminal No.  3:19CR113-MHL |

### POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING AND MOTION FOR DOWNWARD VARIANCE

The United States of America, through its attorneys, G. Zachary Terwilliger, United States Attorney, and Thomas A. Garnett, Assistant United States Attorney, hereby submits its position with respect to sentencing for defendant Steven B. Bridgers.  The United States has reviewed the Presentence Investigation Report (PSR) and does not dispute any of the facts or factors set out therein.  Accordingly, the United States concurs with the guidelines calculation of the U.S. probation officer, which calculates the defendant's total offense level as 12, his criminal history category as I, and his guideline range as 10 – 16 months.

The United States submits that consideration of the Section 3553(a) sentencing factors militates in favor of a downward variance.  First, the defendant is a 61-year old veteran who appears to suffer from Post-Traumatic Stress Disorder ("PTSD"); he has no criminal record and a criminal history score of zero.  Second, the defendant's criminal conduct was limited to one threatening phone call, and the defendant did not undertake any actions that evidenced an intent to actually carry out his threats.  Accordingly, the United States concurs with the Probation Officer's conclusion that the defendant's offense conduct meets the Sentencing Guideline's definition of

"aberrant behavior."[1] Finally, the defendant's (lack of) criminal history, his rapid acceptance of responsibility, and the discrete and limited nature of his criminal conduct all indicate that a lengthy period of probation (accompanied by mandatory mental health conditions) best satisfies the remaining § 3553(a) sentencing factors.

### I. BACKGROUND

The defendant was charged via a Criminal Complaint filed on June 27, 2019, and arrested the next day. (Dk. Nos. 1, 6). The United States filed a one-count Criminal Information on August 13, 2019 that charged the defendant with Interstate Communications, in violation of 18 U.S.C. § 875(c). (Dk. No. 13). The defendant plead guilty to the Criminal Information on August 19, 2019. (Dk. No. 18, PSR ¶ 3).

### II. RELEVANT LEGAL PRINCIPLES

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing guidelines are "effectively advisory." *Id.* at 245. Nonetheless, the advisory nature of the Guidelines "does not mean that they are irrelevant to the imposition of a sentence." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006); *see also United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Thus, a sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while]

---

[1] *See* PSR ¶ 52, citing to U.S.S.G. § 5K2.20, which defines the eligibility requirements for a downward departure predicated on Aberrant Behavior as consisting of a single criminal occurrence or transaction that was "committed without significant planning," was of "limited duration," and represented "a marked deviation by the defendant from an otherwise law-abiding life."

avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted); *United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (E.D. Va. 2005).

A sentencing court should first calculate the range prescribed by the sentencing guidelines after making the appropriate findings of fact. *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Following that calculation, a sentencing court must then "consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *Id.* In selecting a sentence that serves those § 3553(a) factors, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Similarly, though cast in the language of departures, various guidelines provisions and case law support courts' taking into account all relevant information in fashioning an appropriate sentence for a particular defendant. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4.

### III. DISCUSSION

For the reasons outlined below, the United States recommends a sentence of four years' probation, to include the special conditions that the defendant (1) participate in a mental health treatment program and (2) attend and participate in any corresponding counseling sessions.

#### A. Nature and Circumstances of the Offense

The defendant's Statement of Facts provides a relatively exhaustive recitation of the nature and circumstances of the defendant's offense. On the morning of March 4, 2019, while at or in

the vicinity of his residence in Spotsylvania County, the defendant placed a phone call from his cell phone to the U.S. Capitol Switchboard. The defendant asked the operator to connect him to the House Committee on the Judiciary ("Judiciary Committee"). The Switchboard connected the defendant to the Judiciary Committee's offices, located in Washington, D.C.'s Rayburn House Office Building, and an intern working for the Committee answered the transferred call.

The defendant spent the majority of the call providing the intern with his views on a highly-publicized political issue. Towards the end of the conversation, however, the defendant became insistent that the intern relay the defendant's concerns directly to the Committee, eventually issuing a series of threatening comments that described what the defendant would do to the intern (and presumably the intern's colleagues at the Judiciary Committee's offices) if the intern did not do as the defendant directed. Specifically, the defendant told the intern that if the intern did not pass his notes to the Judiciary Committee, he (the defendant) would "shoot [the intern] in the arm. If you [the intern] still don't [pass the note to the Committee], I will shoot you in the leg, and then if you still have not passed the information along I will shoot you in the head."

The defendant also told the intern that he was a "trained veteran" who "knew how to kill"; that the defendant knew where the Judiciary Committee's offices were located from searching online; and that the defendant knew the intern was a "nobody," and that the defendant would therefore "get [the intern] first." The defendant did not dispute that he knew, during the phone call, that the intern would view those statements as threats.

The United States' subsequent investigation included a search of the defendant's home, phone, and electronic devices. Investigators have not uncovered any evidence that indicates that the defendant intended to make good on his March 4 threats, either in the form of preparatory actions or planning-related materials or activity.

**B. History and Characteristics of Defendant**

The defendant was born in Washington, D.C., and raised in Maryland by his mother and stepfather until the age of nine, when his mother divorced his stepfather. PSR ¶¶ 33-37. The defendant was thereafter raised by and lived with his mother. *Id*. He completed high school in Maryland in 1975, and then attended community college in Maryland for two years before joining the U.S. Navy in 1978. PSR ¶¶ 38, 44-45.

The defendant has been married once; the marriage ended in divorce after ten years. PSR ¶ 39. The defendant has no children. *Id*. The defendant reports several health issues, to include back pain, neck pain, high blood pressure, chronic headaches, and a heart murmur. PSR ¶ 41. The defendant was apparently diagnosed with PTSD in 2016, which he attributes to "humiliating and dangerous military service," as well as "many stressful military events." PSR ¶ 42. Since his incarceration (at Pamunkey Regional Jail) on the instant federal charge, the defendant has been prescribed anti-depressant and anti-anxiety medication. *Id*. The defendant reports drinking alcohol only occasionally, and using marijuana on a "weekly basis" prior to his arrest. PSR ¶ 43.

The defendant served in the Navy for approximately six years, receiving an honorable discharge in 1984. PSR ¶ 38, 45. During his time in the service, he was stationed at major ports on both the Atlantic and Pacific coasts. *Id*. Following his discharge, it appears the defendant's primary employment was in the real estate market, although he informed the Probation Officer that he possesses an "expired patent for nanotechnology architecture." PSR ¶ 47. More recently, the defendant reports that he earns about $600 month in donations for singing at the Fredericksburg Farmers Market and other venues. PSR ¶ 46. The PSR notes that the defendant has no assets, no income, and at present, no fixed residence to return to. PSR ¶¶ 48, 38.

The defendant has no criminal convictions, resulting in a criminal history score of zero and placement in Criminal History Category I.  PSR ¶¶ 25-28.

The United States is not aware of any other threatening phone calls placed by the defendant.

**C. Need to Promote Respect for the Law, Afford Adequate Deterrence, and Protect the Public**

The defendant's offense conduct – issuing violent threats to an individual working for the House Judiciary Committee in order to intimidate that individual (and by extension, the Committee) – is serious, harmful, and wasteful.  No one, whether employed in government or any other public endeavor, should have to fear or endure unhinged vitriol when they answer their ringing desk phone.  That the recipient of such threats could suffer serious emotional and/or psychological harm is obvious.  Violent threats (like the defendant's) also waste government and law enforcement resources, because they require an investigative response to locate the perpetrator and determine whether he or she is intent on executing actual, physical violence.

The United States' recommendation of a downward variance in this particular case is driven solely by the significant mitigating factors present in this defendant's history and characteristics, as well as the specific findings of this particular criminal investigation as relate to the nature and circumstances of the defendant's offense conduct.  Absent the exceptionally mitigating factors noted above, the United States would have viewed a sentence of significant incarceration as an appropriate and merited sanction for violent, threatening interstate communications.

Here, however, consideration of those above-discussed sentencing factors drives the government's conclusion that the remaining § 3553(a) sentencing factors – i.e., the need to promote respect for the law; the need to afford adequate deterrence; the need to protect the public – are likewise appropriately satisfied by the parties' recommendation of a probationary sentence.

The defendant has an unblemished record, reflected in his criminal history score of zero. He promptly accepted responsibility for his actions, and has not disputed the relevant facts of his offense.  Specific deterrence thus does not appear to be a serious concern.  By the time of sentencing, the defendant will have been in federal custody for nearly five months.  Under the terms of the parties' sentencing recommendation, he will be subject to the close monitoring and restrictions inherent in federal probation for a term of four years.  His failure to abide by any of those terms of probation – to include mental health treatment and counseling – will likely result in a probation violation and his prompt return to federal custody.  Those current and future sanctions serve to further the sentencing goals of both general deterrence and protecting the public.

Finally, the United States' investigation did not uncover any evidence that the defendant took any actions – before or after the March 4 phone call – that revealed any preparatory activity on the defendant's part, or any other conduct indicating the defendant intended to carry out his threat.  His offense conduct, accordingly, is limited to the singular threatening call described in the Criminal Information.  A lengthy probationary sentence appropriately reflects the seriousness of the defendant's offense, promotes respect for the law, and accomplishes just punishment.

## **CONCLUSION**

For the reasons stated above, the United States submits a downward variance is appropriate in this case.  The United States submits that a sentence of four years' probation, accompanied by the special conditions of mental health treatment and counseling, is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

_____/s/_____

                                Thomas A. Garnett
Virginia Bar No. 86054
Assistant United States Attorney
Attorney for the United States
U.S. Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax:    804-771-2316
Email: Thomas.A.Garnett@usdoj.gov

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

    Carolyn V. Grady
    Federal Public Defender's Office
    701 East Broad Street
    Suite 3600
    Richmond, VA 23219

I also hereby certify that on November 6, 2019, I emailed a true and accurate copy to the following:

    Christopher Zychowski
    United States Probation Officer
    Suite 1150
    701 East Broad Street
    Richmond, Virginia 23219

                                              /s/
                                        Thomas A. Garnett
                                        Virginia Bar No. 86054
                                        Assistant United States Attorney
                                        Attorney for the United States
                                        U.S. Attorney's Office
                                        919 E. Main Street, Suite 1900
                                        Richmond, Virginia 23219
                                        Phone: 804-819-5400
                                        Fax:    804-771-2316
                                        Email: Thomas.A.Garnett@usdoj.gov